AO 91 (Rev. 11/11)   Criminal Complaint

**FILED**

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

FEB 2 1 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. |
| Shawn Darrell Wilson, a/k/a Kenneth Bryant, | ) |
| and Aaron Bryant Allen | ) **2:18-MJ 0046-DB** |
| | ) |
| | ) |

_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of     9/12/2017 to 12/14/2017     in the county of     Sacramento     in the

Eastern     District of     California     , the defendant(s) violated:

| _Code Section_ | _Offense Description_ |
|---|---|
| (1) 18 U.S.C. § 922(a)(1)(A) | (1) Dealing firearms without a license (Wilson only) |
| (2) 26 U.S.C. § 5861(d) | (2) Possession of an unregistered firearm (Wilson only) |
| (3) 26 U.S.C. § 5861(i) | (3) Possession of an unserialized firearm (Wilson only) |
| (4) 18 U.S.C. § 922(g)(1) | (4) Felon in possession of a firearm (both defendants) |

This criminal complaint is based on these facts:

See attached affidavit of ATF Special Agent Matthew C. Ryckman.

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Matthew C. Ryckman, ATF Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date:     02/20/2018

_____
_Judge's signature_

City and state:     Sacramento, California

Hon. Deborah L. Barnes, U.S. Magistrate Judge
_Printed name and title_

### AFFIDAVIT OF SPECIAL AGENT MATTHEW C. RYCKMAN IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Matthew C. Ryckman, being duly sworn, depose and state the following:

### Purpose

1.    This Affidavit is made in support of a criminal complaint and arrest warrant for:

      **a. Shawn Darrell WILSON, a/k/a Kenneth Bryant**
      **b. Aaron Bryant ALLEN**

For the following federal law violations:

      **COUNT 1:**   Dealing firearms without a license  [18 U.S.C. § 922(a)(1)(A)]
      **COUNT 2:**   Possession of an unregistered firearm  [26 U.S.C. § 5861(d)]
      **COUNT 3:**   Possession of an unserialized firearm  [26 U.S.C. § 5861(i)]
      **COUNT 4:**   Felon in possession of a firearm  [18 U.S.C. § 922(g)(1)]

### Affiant's Background and Experience

2.    I am a Special Agent (SA) with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  I have been an ATF Special Agent since August 2016.  I have received training in federal firearms laws and regulations at the ATF National Academy and Federal Law Enforcement Training Center (FLETC).  Prior to becoming an ATF Special Agent, I served as a Police Officer with the Baltimore Police Department (Maryland) for about nine years.  My assignments there included working as a Detective and Task Force Officer (TFO) with the High Intensity Drug Trafficking Area (HIDTA) Drug Enforcement Agency (DEA), Group 54.

3.    I have participated in all aspects of criminal investigations during my 9-year career in law enforcement, including managing confidential informants; surveillance; undercover operations as the undercover operative; conducting controlled purchases of firearms and/or drugs; interviewing suspects; and executing search and arrest warrants.  I have been the affiant of numerous affidavits for search warrants, arrest warrants, and the co-affiant on a Title III wiretap investigation.  I have been the affiant of numerous affidavits for search warrants relating to firearms offenses.

4.    As a result of my training and experience with the ATF and the Baltimore Police Department, I am familiar with the federal laws pertaining to firearms and firearms trafficking.  I know that it is unlawful under Title 18 of the United States Code to deal firearms without a license.  I also know that it is unlawful under Title 26 to possess a firearm that is not registered in the National Firearms Registration and Transfer Record, and to possess an unserialized firearm.  Last, I know that it is unlawful under Title 18 for a previously convicted felon to possess a firearm.

5.    This Affidavit is made in support of a criminal complaint and arrest warrant charging **Shawn Darrell WILSON, a/k/a Kenneth Bryant**, with: (i) dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A); (ii) possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d); (iii) possession of an unserialized firearm, in violation of 26 U.S.C. § 5861(i); and (iv) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

6.     This Affidavit is also made in support of a criminal complaint and arrest warrant charging **Aaron Bryant ALLEN** with: (i) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

7.     The information contained in this Affidavit is based on my review of the reports and files in this case, conversations with other law enforcement personnel involved in this case, and my own personal knowledge. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included every fact known to me about this case. Rather, I have set forth only those facts I believe are necessary to support probable cause for a criminal complaint.

### Statement of Probable Cause

8.     In late-2017, the United States government, and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), was investigation a large-scale firearms manufacturing and trafficking ring that included numerous individuals, including Shawn **WILSON** and Aaron **ALLEN**. At no time relevant to this investigation did **WILSON** have a license to sell or manufacture firearms. And at no time relevant to this investigation did **WILSON** have an application to sell or manufacture firearms pending with the Secretary of the Treasury. **WILSON** and **ALLEN** have both been previously convicted of felony offenses and, as such, are prohibited from possessing firearms and ammunition. Last, all of the transactions discussed herein were audio and/or video recorded.

### Controlled Purchase #1 – September 12, 2017
### (Shawn WILSON)

9.     On September 12, 2017, an ATF confidential informant (referred to hereafter as CI-1), arranged to purchase a Taurus PT145 .45 caliber handgun from Shawn Darrell WILSON, also known as Kenneth Bryant. For this transaction, CI-1 let WILSON known that a third party would be picking up the firearm. Unbeknownst to WILSON, this third party was also an ATF confidential informant (referred to as CI-2 hereafter). Both informants were acting under the direction and guidance of ATF Special Agent Matthew Ryckman. This controlled buy took place in the parking lot at 4600 Mack Road, in Sacramento, in the Eastern District of California.

10.     On September 12, 2017, WILSON sent CI-1 a text message that read, "Millenium compact 45 850." The picture below was attached to the text message:



2

11.     Afterwards, CI-1 called WILSON and WILSON said that his cousin had the firearm, but that he [WILSON] would pick it up and bring it to CI-1. At around 2:27 p.m., CI-2 arrived at the parking lot at the southeast corner of Mack Road and Franklin Boulevard in Sacramento. CI-2 was flagged down by several occupants of a tan Mitsubishi sedan with California license plates 7JOC321. Surveillance units noted that two males and one female were in the Mitsubishi. CI-2 parked next to the Mitsubishi. At that point, WILSON got out of the Mitsubishi's rear passenger seat and he got into CI-2's front passenger seat.

12.     Once inside, WILSON greeted CI-2 and pulled a Taurus handgun from the front of his pants. WILSON told CI-2 that he wanted $850 for the firearm, and he handed the pistol to CI-2. CI-2 gave WILSON $900, and WILSON gave CI-2 $50 in change.

13.     CI-2 asked WILSON for his name and number. WILSON said that his name was "Ken," and he gave CI-2 a phone number of (916) 271-3860. CI-2 asked WILSON if he [WILSON] could get more firearms, and WILSON said, "Oh shit, I'm like, I'm like the gun man out here. I be out here, if I don't got it nigga, then my folks got it. So, just call my phone and I'll hit you up as soon as they come to me." WILSON got out of CI-2's car and got back into the Mitsubishi.

14.     The pistol that CI-2 purchased from WILSON on September 12, 2017 is a Taurus PT145 .45 caliber pistol (s/n: NXC57803). The gun is pictured below:



### Controlled Purchase #2 – September 15, 2017
### (Shawn WILSON; Unknown Male)

15.     On September 15, 2017, during the second controlled buy in this case, CI-2 purchased one Taurus 9mm handgun, one Ruger 9mm handgun, and one Springfield Armory .45 caliber handgun from WILSON for $2,400. The transaction took place in the parking lot at 4600 Mack Road in Sacramento.

16.     On September 15, 2017, WILSON sent CI-2 a text message. The message did not have any actual text, but rather, had two photos attached. WILSON was offering the firearms shown below for sale:



17.    In a series of text messages that followed, CI-2 agreed to purchase both firearms from WILSON.

18.    At around 2:30 p.m., WILSON arrived at the agreed-upon meet location.  WILSON was the driver and sole occupant of a silver Chevrolet Malibu with California license plates 7YFT363. When WILSON arrived, CI-2 got into the front passenger side of WILSON's car.  When CI-2 got in, WILSON pulled a Ruger SR9 9mm and Taurus PT908 9mm from a bag.  CI-2 purchased both guns from WILSON for $1,700.  CI-2 asked WILSON what else he had, and WILSON said, "I can go get this XD45 from my boy."  CI-2 asked how much, and WILSON replied, "He wanted 9 for it."  CI-2 got out of WILSON's car and returned to his own car.

19.    About ten minutes later, at 2:40 p.m., CI-2 called WILSON and said that he had the funds to purchase the third firearm he and WILSON had discussed.  CI-2 and WILSON agreed to meet back at the original meet location.

20.    At around 3:13 p.m., WILSON and unknown male approached CI-2's vehicle on foot. WILSON got into CI-2's front passenger seat and gave CI-2 a Springfield .45 caliber firearm. When CI-2 handed WILSON $700, WILSON told CS-2 that the unknown male wanted $900 for the firearm.  WILSON and the unknown male agreed to let CI-2 have the gun for $700, with the understanding that CI-2 would pay WILSON an additional $200 during their next transaction.

21.    WILSON and the unknown male left the area on foot and went back to WILSON'S silver Chevrolet Malibu, which surveillance units noticed was parked in the northeast corner parking lot of Mack Road and Franklin Boulevard.

/ / /

/ / /

22.     CI-2 purchased the following three firearms from WILSON on September 15, 2017, for a total of $2400:

- One Taurus PT908 9mm handgun (s/n: TMA93934D);
- One Ruger SR9 9mm pistol (s/n: 33713120); and
- One Springfield XD45 .45 caliber pistol (s/n: *obliterated*), which contained 13 rounds of .45 caliber ammunition in the magazine at the time of the transaction.

### Controlled Purchase #3 – September 18, 2017
### (Shawn WILSON)

23.     On September 18, 2017, CI-2 purchased one SCCY handgun and one Smith and Wesson handgun from WILSON for $2,000.  The transaction took place in the parking lot at 4600 Mack Road in Sacramento.

24.     At around 7:30 p.m., CI-2 met WILSON at the agreed-upon meet location.  WILSON gave CI-2 two handguns, and CI-2 gave WILSON $2,000 in pre-recorded funds.

25.     The two firearms that CI-2 purchased from WILSON on September 18, 2017, are pictured below.  CI-2 purchased one SCCY CPX-1 9mm pistol (s/n: obliterated) and one Smith and Wesson .40 caliber pistol (s/n: obliterated).



### Controlled Purchase #4 – September 21, 2017
### (Shawn WILSON)

26.     On September 21, 2017, CI-2 purchased one Wyoming Arms semi-automatic handgun and one Taurus semi-automatic handgun from WILSON for $1,800.  This fourth transaction took place in the parking lot at 4600 Mack Road in Sacramento.

27.     At around 5:40 p.m., CI-2 met WILSON at the parking lot.  WILSON gave CI-2 the two guns and CI-2 gave WILSON $1,800 as agreed upon.

28.     The two firearms that CI-2 purchased from WILSON on September 21, 2017, are pictured below.  CI-2 purchased one Wyoming Arms pistol (s/n: A05680) and one Taurus firearm pistol (s/n: SHN01124).



### Controlled Purchase #5 – September 22, 2017
### (Shawn WILSON)

29.     On September 22, 2017, CI-2 purchased a Glock semi-automatic handgun from WILSON for $1,200.  The transaction took place in the parking lot at 4600 Mack Road in Sacramento.

30.     At around 1:30 p.m., CI-2 met WILSON at the parking lot.  WILSON gave CI-2 the Glock 9mm handgun pictured below (s/n: MHD819), and CI-2 gave WILSON $1,200 as agreed-upon:



/ / /

/ / /

### Controlled Purchase #6 – September 25, 2017
### (Shawn WILSON)

31.     On September 25, 2017, CI-2 purchased one I.O. Inc. AK-47-style 7.62x39mm "Sporter" pistol and one Smith & Wesson M&P .40 caliber pistol from WILSON for $4,000. The transaction took place in the parking lot at 4720 Mack Road in Sacramento.

32.     CI-2 and an ATF undercover agent ("the UC" hereafter), met with WILSON at the parking lot at the agreed-upon time. WILSON greeted the two men and sold them an I.O. Inc. AK-47-style 7.62x39mm "Sporter" pistol (s/n: *obliterated*) and a Smith & Wesson M&P .40 caliber handgun (s/n: HBJ3273) with one high capacity magazine. WILSON also gave CI-2 and the UC a plastic bag with 30 live 7.62x39mm rounds.

33.     The firearms that CI-2 and the UC purchased from WILSON on September 25, 2017, are pictured below:



### Controlled Purchase #7 – October 3, 2017
### (Shawn WILSON; Aaron ALLEN)

34.     On October 3, 2017, CI-2 and the UC purchased a Daewoo DP51 9mm handgun, a Glock Model 22 .40 caliber handgun, and a Smith & Wesson M&P Shield .40 caliber handgun from WILSON. The transaction took place in the parking lot at 4720 Mack Road in Sacramento.

35.     At around 3:36 p.m., surveillance units observed WILSON's previously identified silver Chevrolet Malibu arrive in the area of the meet location. The car parked on the south side of a restaurant near the meet location. WILSON got out of the Malibu and opened the rear passenger

door.  WILSON retrieved a bag, and then got into a white Nissan that arrived at the location.  A records check for the Nissan (California license plates 7LUY722) showed that it was registered to "Sara ALLEN, 6201 Fowler Ave. Apt. 111, Sacramento, CA 95825."  The driver was identified later as Aaron Bryant ALLEN.

36.     Once the Nissan arrived at the meet location, CI-2 got into the car from the rear passenger side door.  The UC walked over and stood outside the door.  Moments later, the UC walked to the trunk of his own [the UC's] car and removed a white cardboard box.  The UC walked back to the Nissan with the box.  A short while later, the UC walked back to his car and placed the box in the trunk.  Afterwards, the UC walked back to the Nissan and continued talking with the occupants.

37.     A brief while later, a second white Nissan (unknown license plate) arrived.  This second Nissan parked adjacent to ALLEN's Nissan.  WILSON got out of the front passenger side of ALLEN's Nissan and got into the front passenger seat of the second Nissan.  WILSON got out a moment later and returned to his original seat in ALLEN's car.  After, CI-2 and the UC returned to the UC's car.  Both Nissans drove away in tandem.

38.     After the operation was complete, CI-2 and the UC debriefed with the operational team.  They reported that WILSON sold them all of the firearms, and that the second Nissan, which was driven by an unknown person, delivered the Smith & Wesson handgun.

39.     The firearms that CI-2 and the UC purchased from WILSON on October 3, 2017 are as follows:  one Glock .40 caliber handgun (s/n: KMH504), loaded with a magazine containing 15 live .40 caliber rounds; one Smith & Wesson M&P Shield .40 caliber handgun (s/n: HWU3221), loaded with one live .40 caliber round chambered and a magazine with 5 live .40 caliber rounds; and one Daewoo DP51 9mm handgun (s/n: BA002845).  CI-2 and the UC paid WILSON $2,700 for the three firearms and accessories (pictured below):



### Controlled Purchase #8 – October 4, 2017
### (Shawn WILSON)

40.     On October 4, 2017, CI-2 and the UC purchased one Taurus Millennium G2 pistol, one Ruger 9E pistol, and one Heckler & Koch USP pistol from WILSON for $2,800.  The transaction took place in the parking lot at 4720 Mack Road in Sacramento.

41.     At around 12:33 p.m., WILSON sent CI-2 the picture messages shown below.



42.     Afterwards, WILSON called CI-2 and said that he was selling the firearms.  CI-2 and WILSON agreed to meet later that day.  At around 5:33 p.m., WILSON arrived at the agreed-upon location.  The UC (who was there with CI-2) opened the trunk of his [the UC's] car and WILSON placed a shoebox inside the trunk.  The UC and WILSON hovered over the shoebox for a few seconds.  At that point, the UC closed the trunk and got into the driver's seat of his car.  CI-2 got out of the passenger's seat of the UC's car and WILSON got into the front seat, at which point, he placed the shoebox in the back seat of the UC's car.

43.     After the operation was complete, the UC gave investigators the shoebox that WILSON delivered.  It contained the firearms described below:

- One Taurus Millennium G2 pistol (s/n: *obliterated*)
- One Ruger 9E pistol (s/n: *obliterated*)
- One Heckler & Koch USP pistol (s/n: 25-128305)

44.   CI-2 and the UC purchased the firearms pictured below from WILSON for $2,800.



**Controlled Purchase #9 – October 8, 2017**
**(Shawn WILSON; Christopher KEMP[1])**

45.   On October 8, 2017, CI-2 and the UC purchased firearms from WILSON, Christopher KEMP, and an unknown third party. This transaction took place in the parking lot at 7808 Gerber Road in Sacramento.

46.   At around 1:50 p.m., WILSON arrived at the initial meet location and directed the UC and CI-2 to a parking lot nearby. WILSON told the UC that a lot of cops go to the Starbucks (where the UC had originally parked). After parking at the new location, WILSON approached the UC's car with a cardboard box. WILSON placed the box in the trunk of the UC's car. The UC saw that it contained one AR-15-style rifle. The UC gave WILSON $1,800 in exchange for the rifle.

47.   A short time later, Christopher KEMP arrived in a black Mercedes Benz with a California custom license plate, "RUNITUP". The UC and WILSON approached the Mercedes Benz and greeted KEMP. KEMP showed the UC four pistols: three Glock handguns, and one Springfield handgun. The UC asked KEMP what other firearms he had for sale. KEMP showed the UC a picture of additional firearms on his phone that KEMP claimed to be in possession of and willing to sell. The UC gave KEMP $4,300 for the four firearms (the three Glocks and the Springfield), and KEMP gave the UC the pistols. The UC placed the firearms in his trunk.

48.   A short time later, an unknown individual arrived at the meet location in a white Nissan vehicle. WILSON contacted the driver and retrieved a Military Armament Corporation (MAC)

---

[1] Some of the official reports list Aaron ALLEN as being present at this transaction. It has been determined that ALLEN was not present at this controlled purchase.

M10, which he gave to the UC, and the UC gave WILSON $1,400 in exchange.  WILSON went back to the unknown male and was seen giving him money for the firearm.

49.     At 2:27 p.m., CI-2 called WILSON and said that the UC wanted to purchase the additional firearms that WILSON and KEMP offered to sell (see paragraph 47).  WILSON told CI-2 that they were headed to the "Greenhaven/Pocket" area to pick up the rest of the firearms, so the deal would occur in that area.

50.     At around 3:20 p.m., the UC and CI-2 met WILSON and KEMP in the area of Florin Road and Greenhaven Drive in a strip mall parking lot.  WILSON and KEMP were in KEMP's black Mercedes Benz (CA license plate "RUNITUP").  The UC purchased four additional firearms from KEMP during this separate transaction.  The UC gave KEMP $3,700 for the firearms.

51.     In all, the UC and CI-2 purchased the following firearms from WILSON, KEMP and the unknown male on October 8, 2017:  one Taurus Ultra-Lite revolver (s/n: JW65276); one Glock 26 pistol (s/n: MCA900); one Springfield Armory XD40 pistol (s/n: XD589152); one Ruger P97DC pistol (s/n: 663-55314); one Glock 27 pistol (s/n: SUS346); one Ruger P94 pistol (s/n: 341-10219); one Glock 26 pistol (s/n: MPL439); one Glock 19 pistol (s/n: BCWS501); one MAC-type pistol (s/n: *nknown*, and unknown manufacturer); and one American Tactical AR-15 rifle (s/n: MS003716).  The total price for all of these firearms was $11,400.  All of the firearms purchased on October 8, 2017 are pictured below:



## Controlled Purchase #10 – October 13, 2017
### (Shawn WILSON)

52.     On October 13, 2017, the UC purchased one Intratec model AB-10 pistol, one Heckler &
Koch USP pistol, and one Combat Delta 10 pistol from WILSON for $3,300.  This transaction
took place near at 960 Florin Road in Sacramento.

53.     At about 6:33 p.m., the UC saw WILSON's previously identified silver Chevrolet Malibu
arrive at the meet location.  WILSON told the UC that he would be coming to the UC's car.  The
UC saw WILSON put on a hooded sweatshirt and walk over the UC's car holding a black toiletry
bag.



54.     WILSON got into the UC's car and sold the UC one Intratec model AB-10 pistol (s/n:
A037760), one Heckler & Koch USP pistol (s/n: *obliterated*), and one Combat Delta 10 pistol
(s/n: DE19935) for $3,300.  The firearms on October 8, 2017, are pictured below:



### Controlled Purchase #11 – October 16, 2017
### (Shawn WILSON; Jerome COX; Dmondo BURNS)

55.　　On October 16, 2017, the UC purchased one Sar Arms SARB6P pistol and one unmarked Glock-type pistol from WILSON for $4,300. This transaction took place near 960 Florin Road in Sacramento.

56.　　At about 1:34 p.m., WILSON arrived at the meet location in his previously identified silver Chevrolet Malibu. WILSON drove through the parking lot, past the UC, and over to an unknown male, later identified as Cederick HUDSON. HUDSON was standing at a black Mercedes Benz with California license plate 7AHU021 (registered to "Cederick Hudson"). Surveillance units saw a female get out of the passenger's side of WILSON's Malibu and walk into the Jimboy's Tacos restaurant, while WILSON stood talking with HUDSON.

57.　　At around 1:38 p.m., surveillance units saw a black Chevrolet Challenger arrive in the area. WILSON greeted the occupants of the Challenger. One of the members of the surveillance team recognized one of the passengers in the Challenger as Jerome COX. A different ATF Special Agent took down the Challenger's license plate (California 8ALL391), which showed that the car was registered to "Dmondo Burns, 3540 Winter Park Drive, Apt. 105, Sacramento, CA 95834." A Detective on the surveillance team was able to confirm that BURNS was driving the Challenger. WILSON, COX, and BURNS huddled together next to the Challenger's driver's side. WILSON then separated and walked over to the UC's car and got into the passenger seat. WILSON sold the UC one Sar Arms SARB6P pistol (s/n: T1102 16G02908) and one unmarked Glock-type pistol (s/n: BCCX721) for $4,300. The firearms purchased on October 16 are pictured below:



### Controlled Purchase #12 – November 5, 2017
### (Shawn WILSON; Jerome Cox; Unknown Hispanic Male)

58.　　On November 5, 2017, CI-2 purchased one Aero Precision AR15-style pistol and one Vulcan V10-45 handgun from WILSON for $4,000. CI-2 and WILSON agreed to meet in the area of Mack Road and Franklin Boulevard in Sacramento.

59.     At around 3:34 p.m., CI-2 met WILSON at the designated meet location. WILSON arrived in his silver Chevrolet Malibu (CA license plates 7YFT363. Prior to this, surveillance units saw WILSON meeting with Jerome COX and an unknown Hispanic male near the area of Lord Tony's Artistic Fingers on Florin Road.

60.     After arriving at the meet location, CI-2 parked next to WILSON'S car. WILSON retrieved a plastic box from his car and gave it to CI-2. WILSON then motioned for the Hispanic male to come over to CI-2's car. Surveillance units saw the Hispanic male retrieve a bag from the black GMC that he was driving and come over to CI-2's car.

61.     CI-2 purchased one Aero Precision AR15-style pistol (s/n: AR22209), and one Vulcan V10-45 (s/n: F10643) handgun from WILSON on November 5, 2017, for $4,000. The firearms are pictured below:



### Controlled Purchase #13 – November 22, 2017
### (Shawn WILSON)

62.     On November 22, 2017, the UC and CI-2 purchased one Glock-type fully automatic pistol, one Glock 27 Gen 3 fully automatic pistol, and roughly 36.21 grams of morphine sulfate from WILSON. This transaction took place at a residence on Gates Way in Sacramento.

63.     At around 5:07 p.m., the UC and CI-2 arrived at the meet location. WILSON got into the UC's car and pulled an AR-15-type pistol out of a backpack. At the same time, WILSON told the UC and CI-2 that another person would be arriving shortly with a Glock pistol. WILSON opened the AR-15-type pistol to show the UC and CI-2 a metal piece (the auto sear) inside that converted the rifle from a semi-automatic firearm into a fully automatic firearm. WILSON told the UC that this was the only one available currently. WILSON gave it to the CI to place in a backpack.

64.     The UC counted and paid WILSON $3,700 for the AR-15-type pistol. WILSON told the UC that he had a contact with seven Glock auto sears. WILSON asked if the UC or CI-2 would be interested in oxycodone. The UC said yes, but WILSON did not have any. WILSON said he had morphine and an extra bottle of morphine. WILSON got out of the UC's car and returned moments later with a bottle of 160 morphine pills.

65.     The UC saw a Buick sedan arrive with California license plate 6PDE385. WILSON got inside the Buick and then returned to the UC's car. WILSON showed the CI a Glock pistol. The UC counted and paid WILSON $3,500 for the Glock pistol. The UC inspected the Glock and WILSON told the UC that there was a Glock 23 pistol available soon. The UC and CI-2 paid WILSON $700 for the 160 morphine pills.

66.     The UC inspected the AR-15-type pistol and inspected the trigger mechanism. The UC saw that there was a silver metal piece placed by the trigger, properly known as an auto sear, to convert the semi-automatic rifle to function in fully automatic mode.



67.     In all, the UC purchased the following items from WILSON on November 22, 2017, for $7,900: one Glock-type fully automatic pistol (s/n: *none*), one Glock 27 Gen 3 fully automatic pistol (s/n: *obliterated*), and roughly 36.21 grams of morphine sulfate. The items purchased are pictured below:



### Controlled Purchase #14 – November 24, 2017
### (Shawn WILSON; Unknown Male)

68.     On November 24, 2017, the UC and CI-2 purchased one Smith & Wesson M&P15 rifle, one Glock 19 pistol, and one Glock 22 pistol from WILSON and an unknown male. This transaction took place at a residence on Gates Way in Sacramento.

69.     At around 1:44 p.m., the UC and CI-2 arrived at the meet location. The UC saw a black Nissan sedan leaving the home as the UC and CI-2 arrived. The UC also saw a gold GMC Yukon parked in front of the house.



70.     After the UC greeted WILSON, WILSON got into the rear passenger side door of the gold GMC Yukon. Then, the UC got into the front passenger side of the Yukon. WILSON turned to an unidentified male and asked him where the magazine for the Glock was located. The man said that it was in the side pocket of the bag.

71.     WILSON removed a Glock 19 pistol and gave it to the UC to inspect. WILSON told the UC that the unidentified male wanted to keep the rifle bag. WILSON removed the rifle from the bag. The UC then counted and paid WILSON $3,200 for the two firearms. WILSON then packed the firearms into a black bag that the UC and CI-2 provided.



16

72.      WILSON got out of the Yukon with the bag and walked to the UC's car.  WILSON then placed the bag in the rear passenger seat.  The UC and CI-2 left afterwards.



73.      As the UC and CI-2 were leaving, CI-2 received a phone call from WILSON telling him that WILSON had one more firearm for sale.  CI-2 told WILSON that they would return shortly to purchase the firearm.

74.      At approximately 2:00 p.m., the UC and CI-2 returned to the residence.  The UC got out of his car and WILSON greeted him.  WILSON told the UC that the gun was still being packaged. Shortly afterwards, WILSON and a second unknown male came out of the house.  The unknown male got into the UC's car through the rear driver side door, as WILSON stood by the passenger side doors.



75.      The unknown male removed a black bag from a backpack.  The man showed the UC the drum magazine.  The UC inspected the gun and then counted and paid the unknown male $2,000 for the Glock pistol.

76.      The UC purchased one Smith & Wesson M&P15 rifle (s/n: 75261), one Glock 19 pistol (s/n: USD229), and one Glock 22 pistol (s/n: BETV206) from WILSON and the first unknown male for $5,100. These firearms and accessories are pictured below:



**Controlled Purchase #15 – November 27, 2017**
**(Shawn WILSON)**

77.     On November 27, 2017, CI-1 purchased one Glock 21 Gen4 .45 caliber fully automatic pistol, and three unmarked/unserialized AR-type pistols from WILSON.  The transaction took place at the ARCO gas station at 8024 Elder Creek Road in Sacramento.

78.     On November 27, 2017, at around 9:45 a.m., WILSON called CI-1 from telephone number (916) 271-3860.  WILSON told CI-1, "hey, my boy got three AR pistols with three round bursts, all brand new, still in the plastic."  WILSON then said, "we gotta make at least 26 (referring to $2,600 per firearm)."  CI-1 agreed to purchase the firearms from WILSON.

79.     WILSON called CI-1 about an hour later, at 10:45 a.m., and said, "I got a Glock 21, .45 with a fully switch on it" (referring to a Glock model 21 .45 caliber semi-automatic firearm, that has an aftermarket fabrication enabling the firearm to become a full automatic firearm).  WILSON said, "me and (inaudible) paid 16 (i.e., $1,600) a piece on it, so we need to make something on it."  CI-1 agreed to purchase all of the firearms and agreed to meet WILSON at the ARCO gas station at 12:30 p.m.

80.     At 12:49 p.m., WILSON arrived at the gas station in a black Nissan with California license plate 7SSC329 (the car was a rental vehicle registered to "EAN Holdings").  The Nissan parked next to CI-1's car and WILSON got out of the front passenger seat.  WILSON got into the rear passenger seat of CI-1's car and placed a kitchen cooking ware box which contained the firearms, on the back seat.



81.     Special Agent Ryckman was monitoring the conversation between CI-1 and WILSON and heard that WILSON needed additional money for the fully automatic Glock. CI-1 purchased the three AR-style pistols for $7,800. WILSON returned to the Nissan as CI-1 left the lot and traveled back to meet Special Agent Ryckman to get additional buy funds. CI-1 then traveled back to the ARCO gas station and met with WILSON. WILSON got into CI-1's car and sat in the front seat.

82.     During this second controlled buy, WILSON sold CI-1 the fully automatic Glock pistol for $4,000.



/ / /

/ / /

/ / /



83.    Afterwards, WILSON got out of CI-1's car and he got back into the Nissan rental and left the area.

84.    CI-1 purchased the following items from WILSON on November 27, 2017 for $11,800: three unmarked/unserialized AR-15-type pistols (s/n: *none*), and one Glock 21 Gen 4 .45 caliber fully automatic pistol (s/n: WNY326). The firearms are pictured below:



85.    Special Agent Ryckman examined the Glock and observed an aftermarket switch attached to the rear of the slide. The switch was marked "Glock" and was able to slide left to right. Special Agent Ryckman conducted a field test of the firearm with the switch in the left position and right position. (*See* photo below.) The gun functioned as a fully automatic firearm when the switch was positioned to the right. The Glock (s/n: WNY326) is not registered in the National Firearms Registration and Transferred Record, which it is required to be as a fully-automatic "machinegun."



## Controlled Purchase #16 – December 05, 2017
### (Shawn WILSON)

86.     On December 5, 2017, the UC purchased two unmarked/unserialized AR-15-type pistols from WILSON.  This transaction took place near 43rd Avenue and 40th Street in Sacramento.

87.     At around 5:16 p.m., the UC arrived at the meet location.  The UC met WILSON, who was holding a box.  WILSON greeted the UC and said that the firearms were new and still wrapped in plastic.  The UC inspected the pistols and placed them in a backpack.  The UC counted and paid WILSON $4,000 for the two AR-15-type pistols (s/n: *none*).  The firearms and accessories are pictured below:



**Controlled Purchase #17 – December 8, 2017**
**(Shawn WILSON)**

88.     On December 8, 2017, the UC purchased one Glock 22 pistol from WILSON.  This transaction took place near 43rd Avenue and 40th Street in Sacramento.

89.     The UC arrived at the meet location and at around 5:08 p.m., WILSON emerged from the area and walked towards the UC's car from 40th Street.  WILSON got into the UC's car on the passenger side and greeted the UC.  WILSON removed the Glock pistol and a "drum" magazine from inside his pants.  The UC inspected the Glock briefly and placed it in a backpack.

90.     The UC counted and paid WILSON $1,800 for the Glock 22 pistol (s/n: FNH108).  The pistol and drum magazine are pictured below.



**Relevant Events on Takedown Day – December 14, 2017**
**(6201 Fowler Avenue, Apt. 111, Sacramento (Aaron ALLEN's residence))**

91.     On December 14, 2017, law enforcement executed a search warrant at Aaron ALLEN's apartment at 6201 Fowler Avenue, Apartment 111, Sacramento, California.  The search warrant was signed on December 12, 2017, by Judge Steven White, Superior Court of California, County of Sacramento, and it authorized law enforcement to arrest Mr. ALLEN.

92.     At around 7:00 a.m., the entry and perimeter teams approached the unit.  After knocking and announcing several times, the entry team forced entry into the apartment and conducted a protective sweep of the interior.  The entry team found ALLEN in the hallway.  Two other adult occupants (Sara Allen and Dana Chatwin) came out of the master bedroom and second bedroom, respectively.  ALLEN was taken into custody and the other adults were detained and searched.  Shortly afterwards, two juveniles came out of the first bedroom.

93.     Once the entry team had secured the apartment, an ATF Special Agent took photos while conducting a pre-search walk-through of the interior and exterior. Special Agent Bietz gave a copy of the search warrant to Sara Allen and then explained the search warrant to her and Aaron ALLEN. Then, as Resident Agent in Charge Barlowe talked with Sara and Aaron ALLEN, the search team began searching the residence and two vehicles pursuant to the search warrant.

94.     The following evidence was seized from the master bedroom:

- Springfield SA XD Sub-Compact 9mm pistol (s/n: XD806723), found near the left bedside table;
- Springfield pistol box with accessories, including two magazines and 10 rounds of 9mm ammunition, found near the left bedside table;
- Federal Premium ammunition box containing ten rounds of 9mm ammunition, found near the left bedside table;
- Glock 19 9mm pistol (s/n: BESS665), found in a Glock pistol box on the top self of the closet;
- Springfield XD-40 .40 caliber pistol (s/n: XD521560), found in a Glock pistol box on the top self of the closet;
- Glock pistol box with items 4 and 5, above. Found on the top shelf of the closet. The box also contained three pistol magazines and 12 rounds of .40 caliber ammunition;
- Samsung Cell Phone SN:357518055617385 found on bedside table;
- Samsung Cell Phone SN:358865050775182 found on bedside table;
- Smith and Wesson SD9VE 9mm pistol (s/n: FMX6231), found in a hat bucket in the closet;
- Assorted ammunition found in a hat bucket in the closet; and
- Blue shoe box containing firearms accessories, pistol magazines, and a single bullet located in the closet.

95.     The following relevant items were seized from elsewhere in the apartment:

- Apple iPhone (A1784 BCG-E3092A) found near the kitchen. Sara Allen told investigators that the phone belongs to Aaron ALLEN;
- Identification belonging to Aaron ALLEN found in a white Nissan; and
- Indicia for Aaron ALLEN, including a letter addressed to Aaron ALLEN from the fire department and a letter addressed to Aaron ALLEN from the California DMV both found in the master bedroom.

96.     Investigators noted that the firearms and ammunition in the apartment were not secured in such a way that would prevent the access to the firearms by anyone with access to the master bedroom.

97.     All evidence collected during the search was logged and booked into the Sacramento ATF evidence vault. ALLEN was arrested and booked into the Sacramento County Jail. All digital photos were recorded on a DVD disk and placed in the case file.

# # # #

98.     The Glock Model 22 pistol that Shawn WILSON possessed and sold on December 8, 2017 (*see* paragraphs 88-90, above), is a "firearm" as defined in 18 U.S.C. § 921(a)(3). I know from my training and experience that most Glock pistols are manufactured in Austria, but that some Glock handguns are assembled at Glock USA's domestic production facility in Smyrna, Georgia. In either event, it is my opinion that the Glock pistol (s/n: FNH108) that WILSON possessed and sold on December 8, 2017, was not made in the California, and that if this firearm was possessed in the State of California, it necessarily traveled in interstate or foreign commerce to get here.

99.     I have reviewed Shawn WILSON's criminal history. His adult criminal record includes: (i) a July 2009 felony conviction for carrying a concealed weapon, in violation of California Penal Code, Section 12025(b)(6); and (ii) a May 2015 felony conviction for possessing a firearm as a felon, in violation of California Penal Code, Section 29800(a)(1). As a previously convicted felon, WILSON is not allowed to possess any firearms or ammunition.

100.     With respect to the Glock pistol (s/n: BESS665) found in Aaron ALLEN's master bedroom closet during a search of ALLEN's apartment on December 14, 2017, it is also my opinion—for the reasons explained in paragraph 98, above—that this firearms was not made in California, and that if this firearm was possessed in the State of California, it necessarily traveled in interstate or foreign commerce to get here.

101.     I have reviewed Aaron ALLEN's criminal history. His adult criminal record includes an April 2015 felony conviction for possessing a firearm as a felon, in violation of California Penal Code, Section 29800(a)(1). As a previously convicted felon, ALLEN is not allowed to possess any firearms or ammunition.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## Conclusion

102.    Based on the foregoing, I request that a criminal complaint and arrest warrant be issued for Shawn Darrell WILSON, also known as Kenneth Bryant, charging him with: (i) dealing firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A); (ii) possessing an unregistered firearm, in violation of 26 U.S.C. § 5861(d); (iii) possessing an unserialized firearm, in violation of 26 U.S.C. § 5861(i); and (iv) possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1).

103.    I also request that a criminal complaint and arrest warrant be issued for Aaron Bryant ALLEN, charging him with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1).

I declare under the penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Matthew C. Ryckman
Special Agent
Bureau of Alcohol, Tobacco, Firearms
    and Explosives

Sworn to and subscribed before me on February 20, 2018.

Hon. Deborah L. Barnes
United States Magistrate Judge

Approved as to form:

Timothy H. Delgado
Assistant United States Attorney

**United States v. Shawn Darrell Wilson, et al.**

**Penalties for Criminal Complaint**

**DEFENDANTS:**      **1) Shawn Darrell WILSON, a/k/a Kenneth Bryant**
                     **2) Aaron Bryant ALLEN**

**COUNT 1:**          **(Wilson only)**

VIOLATION:          18 U.S.C. § 922(a)(1)(A) – Dealing firearms without a license

PENALTIES:          -- A term of imprisonment for up to 5 years,
                    -- A fine of up to $250,000, or both fine and imprisonment,
                    -- A term of supervised release for up to 3 years.

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 2:**          **(Wilson only)**

VIOLATION:          26 U.S.C. § 5861(d) – Possession of an unregistered firearm

PENALTIES:          -- A term of imprisonment for up to 10 years,
                    -- A fine of up to $10,000, or both fine and imprisonment,
                    -- A term of supervised release for up to 3 years.

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 3:**          **(Wilson only)**

VIOLATION:          26 U.S.C. § 5861(i) – Possession of an unserialized firearm

PENALTIES:          -- A term of imprisonment for up to 10 years,
                    -- A fine of up to $10,000, or both fine and imprisonment,
                    -- A term of supervised release for up to 3 years.

SPECIAL ASSESSMENT: $100 (mandatory on each count)

**COUNT 4:**          **(Both defendants)**

VIOLATION:          18 U.S.C. § 922(g)(1) – Felon in possession of a firearm.

PENALTIES:          -- A term of imprisonment for up to 10 years,
                    -- A fine of up to $250,000, or both fine and imprisonment,
                    -- A term of supervised release for up to 3 years.

SPECIAL ASSESSMENT: $100 (mandatory on each count)